**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **RONALD L. COPPAKEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-0316-CV-W-GAF** |
| | ) | |
| **KEYSTONE AUTOMOTIVE** | ) | |
| **OPERATIONS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT KEYSTONE AUTOMOTIVE OPERATIONS INC.'S ANSWER TO
PLAINTIFF'S PETITION FOR DAMAGES AND COUNTERCLAIMS[1]**

For its answer to Plaintiff's Petition, Defendant Keystone Automotive Operations Inc. ("Keystone") states and avers as follows:

**ANSWER TO NATURE OF ACTION ALLEGATION**

1.      Plaintiff brings this action against Keystone Automotive Operations, Inc. ("Keystone"), for its fraudulent actions, and for breach of contract. This action arises out of Keystone's deliberate misrepresentations regarding its intentions to employ Plaintiff Ronald Coppaken in an executive position as an integral part of Keystone's purchase of the assets of three businesses in which Mr. Coppaken was a principal shareholder or partner, Arrow Speed Warehouse, Inc., Streetside Auto, LLC, and BCGG Real Estate Company LLP, and its subsequent failure to honor the agreement to employ Mr. Coppaken after purchasing the assets of his companies.

---

[1] Plaintiff did not originally file a Complaint in this Court, but rather a Petition in The Circuit Court of Jackson County, Missouri. Defendant subsequently removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

**ANSWER:**

**Defendant denies the allegations in Paragraph 1.**

2.      As the result of Keystone's misrepresentations and its failure to honor its agreement to employ Mr. Coppaken, Plaintiff was defrauded and fraudulently induced to sell the assets of his companies, and has been denied the benefits of his agreement, resulting in significant damages to Plaintiff.

**ANSWER:**

**Defendant denies the allegations in Paragraph 2.**

<u>**ANSWER TO JURISDICTION AND VENUE ALLEGATION**</u>

3.      Jurisdiction over Defendant is proper pursuant to R.S.Mo. § 506.500 and venue is proper in Jackson County pursuant to R.S.Mo. § 508.010 in that the acts complained of and causes of action accrued in Jackson County, Missouri.   The negotiations of the asset purchase agreement and the other contracts took place in Jackson County, Missouri, and Defendant's representatives traveled to Jackson County, Missouri to enact the scheme to defraud Plaintiff.

**ANSWER:**

**Answering Paragraph 3, Defendant admits only that jurisdiction and venue are proper in this Court, and denies the remaining allegations in Paragraph 3.**

<u>**ANSWER TO THE PARTIES ALLEGATION**</u>

4.      Plaintiff Ronald Coppaken is a resident of Leawood, Kansas.  Prior to the sale of the assets of his companies to Defendant Keystone, he was the principal shareholder of Arrow Speed Warehouse, Inc., a Missouri corporation, Streetside Auto, LLC, a Kansas limited liability company, and a general partner in BCGG Real Estate Company LLP, a Missouri limited partnership.

**ANSWER:**

**Defendant admits the allegations in paragraph 4 of Plaintiff's Petition.**

5.     Defendant Keystone Automotive Operations, Inc, is a Pennsylvania corporation with its principal place of business in Exeter, Pennsylvania.  Defendant Keystone engaged in negotiations and entered into contracts in Jackson County, Missouri in conjunction with the asset purchase of Mr. Coppaken's companies and the agreements with Mr. Coppaken.  Following the purchase of the assets of Mr. Coppaken's companies, Defendant Keystone has conducted business in Jackson County, Missouri through its wholly owned subsidiary, Keystone Automotive Operations Midwest, Inc.

**ANSWER:**

**Answering Paragraph 5, Defendant admits only that it is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Exeter, Pennsylvania and that at times it engaged in negotiations ultimately resulting in a purchase of assets from certain companies, and denies the remaining allegations in Paragraph 5 of Plaintiff's Petition.**

**ANSWER TO FACTS COMMON TO ALL CAUSES OF ACTION ALLEGATION**

6.     Ronald Coppaken owned and operated Arrow Speed Warehouse, Inc., a family- owned company, from 1985 through 2008.  The company distributed after market automotive accessories and performance parts, many for the customization of pick-up trucks and automobiles.  Plaintiff Coppaken also started Streetside Auto, LLC, which sold automotive parts, and BCGG Real Estate Company LLP, which owned and managed properties in the Kansas City area.

**ANSWER:**

**Defendant admits the allegations in Paragraph 6 of Plaintiff's Petition.**

7.     In the spring of 2008, Mr. Coppaken entered into discussions with representatives of Defendant Keystone, a competitor of Arrow Speed Warehouse and Streetside Auto.     Defendant Keystone's representatives indicated an interest in purchasing assets of Mr. Coppaken's companies.     In or around May 2008, Defendant Keystone's representatives sent Mr. Coppaken an initial Letter of Intent to purchase the assets of his companies.     This letter of intent also stated Defendant Keystone's intent to employ Mr. Coppaken and his two sons as integral parts of the "team" of the new organization.

**ANSWER:**

**Answering Paragraph 7, Defendant admits only that, in the Spring of 2008, Defendant Keystone participated in certain discussions with Plaintiff regarding the purchase of the assets and liabilities of Arrow Speed Warehouse, Inc. and that there was a non-binding Letter of Intent in May, 2008 that was not attached to the Petition, but that would be the best evidence of what is contained therein, and Defendant denies the remaining allegations in Paragraph 7.**

8.     Throughout the spring and summer of 2008, Plaintiff Coppaken and Defendant Keystone continued negotiations regarding the purchase of the assets of Mr. Coppaken's companies.     At all times during these negotiations, it was understood by Defendant Keystone that the retention and employment of Mr. Coppaken was a key element of any deal going forward.     The Keystone representatives traveled to Kansas City, Missouri and these negotiations took place primarily at various hotels in Kansas City, Missouri.

**ANSWER:**

**Answering Paragraph 8, Defendant admits only that around or after June 30, 2008, the nature of the discussions between Keystone and Plaintiff moved toward a purchase of certain assets out of bankruptcy. Defendant denies that retention and employment of Plaintiff was part of the asset purchase deal, and further denies any remaining allegations in Paragraph 8.**

9.    By September 2008, the parties had agreed to the outlines of the deal that would be structured for the purpose of Defendant Keystone's acquisition of the assets of Mr. Coppaken's companies. As part of the deal, Keystone required that Mr. Coppaken put his companies into bankruptcy, and Keystone agreed to offer a bid of at least $12 million for the assets in bankruptcy. The requirement of the bankruptcy filing was listed as a condition precedent to the purchase in the Asset Purchase Agreement.

**ANSWER:**

**Answering Paragraph 9, Defendant admits only that in or around September, 2008, the parties were negotiating an Asset Purchase Agreement which is not attached to the Petition, but which was signed by both parties and is the best evidence of what is contained in that Agreement, and which contained a provision concerning the entire understanding of the parties superseding all other prior agreements and understandings of the parties. Defendant denies the remaining allegations in Paragraph 9 to the extent such allegations are inconsistent with or attempt to characterize said Asset Purchase Agreement.**

10.    At the same time that the Asset Purchase Agreement was being negotiated, Defendant Keystone was also negotiating the terms of an Employment Agreement with Mr. Coppaken. On September 20, 2008, the parties reached an agreement regarding Mr. Coppaken's employment as a Senior Vice-President. A true and correct copy of the Employment Agreement is attached as Exhibit 1 and is incorporated herein. The Employment Agreement included a base salary per year, with added bonus incentives for the attainment of certain performance levels. Altogether, the Employment Agreement

provided for compensation to Mr. Coppaken of more than $2 million over the next three years. The Employment Agreement and incentive bonuses were agreed to by Defendant Keystone, and were negotiated and approved by Ed Orzetti, the President of Defendant.

**ANSWER:**

**Answering Paragraph 10, Defendant admits only that attached to Plaintiff's Petition as Exhibit 1 is an unsigned Employment Agreement that is the best evidence of what is contained in that Agreement, and further admits only that Ed Orzetti holds the title of President and CEO of Defendant. Defendant denies the allegations about the contents of the Employment Agreement to the extent such allegations are inconsistent with or attempt to characterize what is stated in Exhibit 1 to Plaintiff's Petition. Defendant is presently without information and knowledge sufficient to form a belief about the remaining allegations in Paragraph 10 and, therefore, denies them.**

11. The Employment Agreement was an integral part of the entire deal, and Defendant Keystone was aware of the importance of the Employment Agreement. There were substantial negotiations regarding the Employment Agreement. Mr. Coppaken was willing to and did accept a lower minimum bid for the assets of his companies because of the opportunities he would have as a Senior Vice-President pursuant to his Employment Agreement with Defendant.

**ANSWER:**

**Defendant denies the allegations in Paragraph 11 of Plaintiff's Petition.**

12. On September 21, 2008, the parties signed the Asset Purchase Agreement. When Mr. Coppaken's counsel requested signature of the Employment Agreement, Defendant Keystone indicated that they preferred the Employment Agreement be formally signed at the final Closing of the Asset Purchase, once the bankruptcy proceeding had been completed. Defendant Keystone's representatives indicated that the delay was to avoid any appearance of collusion during the bankruptcy proceedings.

**ANSWER:**

**Answering Paragraph 12 of Plaintiff's Petition, Defendant admits only that there was an Asset Purchase Agreement signed in September 2008, and that the Employment Agreement attached as Exhibit 1 was not signed at that time or otherwise, and that counsel for the parties had discussions about Defendant not employing Plaintiff before the end of the sale process, and Defendant denies the remaining allegations in Paragraph 12.**

13.     Based on the agreements and representations of Defendant, Mr. Coppaken filed for bankruptcy on behalf of his companies on September 22, 2008 in the United States Bankruptcy Court for the Western District of Missouri.  During the pendency of the bankruptcy proceedings, Mr. Coppaken extended his full cooperation, as he had agreed to do, in working diligently and tirelessly to convince key customers of his businesses to transfer their business to the new Keystone entity.  He also worked hard to convince key employees of his companies that Defendant Keystone wished to retain them in key positions with Keystone.

**ANSWER:**

**Answering Paragraph 13, Defendant admits only that in September, 2008 Plaintiff filed bankruptcy on behalf of certain companies. Defendant is presently without information and knowledge sufficient to form a belief about the remaining allegations of Paragraph 13 and, therefore, denies them.**

14.     Defendant Keystone was aware of Mr. Coppaken's efforts during the pendency of the bankruptcy.  Defendant Keystone also was aware that Mr. Coppaken, throughout the pendency of the bankruptcy proceedings, understood that once the bankruptcy proceedings were completed, he would assume the duties of a Senior Vice-President for Keystone.  At no time during the bankruptcy proceedings did Defendant Keystone indicate in any way that it planned to or in fact had reneged on the Employment Agreement with Mr. Coppaken.

KCP-3074838-2

**ANSWER:**

**Defendant denies the allegations in Paragraph 14 of Plaintiff's Petition.**

15.     The United States Bankruptcy Court for the Western District of Missouri approved and finalized the bankruptcy proceedings on October 31, 2008.  Defendant Keystone was the winning bidder for purchase of the assets with a bid of $12 million. The Closing of the purchase of the assets was set for November 7, 2008.

**ANSWER:**

**Answering Paragraph 15, Defendant admits only that on October 31, 2008 the Bankruptcy Court approved the bidding procedures and the sale of the companies thereunder to Defendant with a closing date of November 7, 2008, and denies the remaining allegations in Paragraph 15 of Plaintiff's Petition.**

16.     On November 5, 2008, two days before the closing, Mr. Coppaken's counsel indicated to Defendant Keystone's counsel that he expected to receive a signed copy of the Employment Agreement.  Shortly thereafter, Mr. Coppaken received a telephone call from Ed Orzetti, the President of Defendant Keystone.  Mr. Orzetti informed Mr. Coppaken that Keystone no longer had an interest in employing him, but that they would send him a Consulting Agreement which was to replace the Employment Agreement that had been agreed upon.  Mr. Orzetti refused to give any specifics as to why Defendant Keystone was refusing to honor the Employment Agreement.

**ANSWER:**

**Answering Paragraph 16, Defendant admits only that before the closing of the asset purchase, Defendant was not interested in employing Plaintiff or entering into the Employment Agreement, that Plaintiff was so informed by Mr. Orzetti, and that Plaintiff was then provided a form of a consulting agreement that Defendant was considering to govern any relationship with Plaintiff.  Defendant denies the remaining allegations in Paragraph 16 of Plaintiff's Petition.**

17.     Later that day Mr. Coppaken's counsel received a Consulting Agreement from Defendant Keystone, along with an email indicating that this was the offer being made to Mr. Coppaken.  A true and correct copy of the Consulting Agreement is attached as Exhibit 2 and is incorporated herein.  The terms of the Consulting Agreement were far less favorable than those of the Employment Agreement.  Mr. Coppaken's counsel attempted repeatedly to contact counsel for Defendant to discuss the Consulting Agreement, but Defendant Keystone and its counsel did not respond.

**ANSWER:**

**Answering Paragraph 17 of Plaintiff's Petition, Defendant admits only that then counsel for Defendant sent an email transmitting a Consulting Agreement to Plaintiff's counsel, and that attached to the Petition as Exhibit 2 is an unsigned Consulting Agreement bearing the stamp "K&E Draft 11/05/08" and fax transmission time stamp of 08:49 on November 7, 2008 from Arrow Speed Marketing to (816) 421-5547 that is the best evidence of what is contained in said Consulting Agreement.  Defendant denies any remaining allegations in Paragraph 17.**

18.     Mr. Coppaken's companies had now gone through bankruptcy, and his employees and customers were transferring to Keystone.  The sale to Keystone had been approved by the bankruptcy court.  Mr. Coppaken, believing that he had no alternative, signed the Consulting Agreement, which was faxed to Defendant Keystone's counsel.  A true and correct copy of the signature page signed by Mr. Coppaken is attached as Exhibit 3, and is incorporated herein.  Thereafter, the closing documents were signed by the parties on November 7, 2008.

**ANSWER:**

**Answering Paragraph 18 of Plaintiff's Petition, Defendant admits only that the sale of Plaintiff's companies was completed per the Bankruptcy Court on November 7, 2008, and that Plaintiff attached as Exhibit 3 to the Petition a Signature Page to Consulting Agreement purportedly signed by Plaintiff but not signed by Defendant, and that such page was transmitted from Plaintiff's counsel to Defendant's then**

**counsel and that Exhibit 3 is the best evidence of what is contained in Exhibit 3. Defendant is presently without information and knowledge sufficient to form a belief about the remaining allegations in Paragraph 18 of Plaintiff's Petition and, therefore, denies them.**

19.    The Consulting Agreement provided for periodic payments, and when the time for the first payment had passed, Mr. Coppaken contacted Defendant Keystone because he had not received it. On November 25, 2008, Defendant Keystone repudiated the Consulting Agreement through its Vice-President of Human Resources, Deborah Branden, who stated: "Ron, Keystone Automotive Operations, Inc. does not have a contractual agreement with you for either employment or consulting work. Keystone did not sign any agreements to this effect and has no intentions of doing so."

**ANSWER:**

**Answering Paragraph 19 of Plaintiff's Petition, Defendant admits only that Deborah Branden holds the title of Vice-President Human Resources and Internal Communication, that the Consulting Agreement was not signed by or agreed to by Defendant, and that the quotation, "Ron, Keystone Automotive Operations, Inc. does not have a contractual agreement with you for either employment or consulting work. Keystone did not sign any agreements to this effect and has no intentions of doing so," appears in an e-mail from Ms. Branden to Plaintiff dated November 25, 2008. Defendant is presently without information and knowledge sufficient to form a belief about the remaining allegations in Paragraph 19 of Plaintiff's Petition and, therefore, denies them.**

20.    Defendant Keystone has continued to refuse to honor its agreements with Mr. Coppaken, causing him significant damages.

**ANSWER:**

**Defendant denies the allegations in Paragraph 20 of Plaintiff's Petition.**

**ANSWER TO COUNT I**
**FRAUD AND INTENTIONAL MISREPRESENTATION**

21.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**ANSWER:**

**Defendant hereby incorporates its responses to Paragraphs 1 through 20 as if fully set out herein.**

22.     Defendant Keystone repeatedly stated affirmatively to Plaintiff Coppaken that Keystone had an agreement to employ him as a Senior Vice President, and set forth the details of the terms of that employment.  Immediately prior to the signing of the asset purchase agreement, and the filing for bankruptcy, on September 20, 2008, Defendant Keystone reiterated its agreement to employ Mr. Coppaken as a Senior Vice President. This representation was made, *inter alia*, by Ed Orzetti, President of Defendant Keystone.

**ANSWER:**

**Answering Paragraph 22, Defendant admits only that there were various discussions with Plaintiff, but except as admitted previously, Defendant is presently without information and knowledge sufficient to form a belief about the remaining allegations in Paragraph 22 of Plaintiff's Petition and, therefore, denies them.**

23.     As of September 20, 2008, such representations were false, because Defendant Keystone had no intention of employing Mr. Coppaken, and Defendant Keystone knew that its representations of employment to Mr. Coppaken were false.

**ANSWER:**

**Defendant denies the allegations in Paragraph 23 of Plaintiff's Petition.**

24.     Defendant's representations of an employment agreement were material, and Mr. Coppaken would not have followed through with the signing of the asset purchase agreement and the bankruptcy filing had he known the false nature of the misrepresentations.

**ANSWER:**

**Defendant denies the allegations in Paragraph 24 of Plaintiff's Petition.**

25.     Mr. Coppaken relied on the statements of employment by Defendant Keystone, and had the right to rely on those statements.  Defendant Keystone intended that Mr. Coppaken rely on those statements in entering into the asset purchase agreement and in filing for bankruptcy.

**ANSWER:**

**Defendant denies the allegations in Paragraph 25 of Plaintiff's Petition.**

26.     On November 5, 2008, after the completion of the bankruptcy, Ed Orzetti, the President of Keystone, informed Mr. Coppaken that Keystone was offering him a Consulting Agreement, and set forth the terms of such Consulting Agreement in writing.

**ANSWER:**

**Answering Paragraph 26, except as previously admitted, Defendant denies the allegations in Paragraph 26 of Plaintiff's Petition.**

27.     As of November 5, 2008, such representations were false, because Defendant Keystone had no intention of paying Mr. Coppaken for consulting services, and Defendant Keystone knew that such representations regarding retaining Mr. Coppaken as a consultant were false.

**ANSWER:**

**Defendant denies the allegations in Paragraph 27 of Plaintiff's Petition.**

28.     The representations regarding the retention of Mr. Coppaken as a consultant were material to Mr. Coppaken's closing of the asset purchase.

**ANSWER:**

**Defendant denies the allegations in Paragraph 28 of Plaintiff's Petition.**

29.     Mr. Coppaken relied on the statements by Defendant Keystone that it was retaining him as a consultant, and had the right to rely on those statements.  Defendant

Keystone intended that Mr. Coppaken rely on those statements in closing the asset purchase.

**ANSWER:**

**Defendant denies the allegations in Paragraph 29 of Plaintiff's Petition.**

30.     Defendant acted in wanton, willful, and conscious disregard for Plaintiff's rights.

**ANSWER:**

**Defendant denies the allegations in Paragraph 30 of Plaintiff's Petition.**

31.     As a direct result of Defendant's intentional misrepresentations, Plaintiff has suffered damages including but not limited to the value of the Employment Agreement, including the incentive bonuses pursuant to the Employment Agreement, and the reduced value of the asset purchase price to which he agreed with the understanding that he would be provided additional compensation through the Employment Agreement, and/or the value of the Consulting Agreement.

**ANSWER:**

**Defendant denies the allegations in Paragraph 31 of Plaintiff's Petition.**

WHEREFORE, having fully answered Count I of Plaintiff's Petition, Defendant prays the Court dismiss Count I of Plaintiff's Petition in its entirety, and that Plaintiff take nothing by the Petition or otherwise, and that Defendant be awarded its costs, and for such other relief as the Court deems just and proper.

## ANSWER TO COUNT II
## FRAUD AND INTENTIONAL MISREPRESENTATION THROUGH SILENCE

32.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**ANSWER:**

**Defendant hereby incorporates its responses to Paragraphs 1 through 31 as if fully set out herein.**

33.    Defendant Keystone repeatedly stated affirmatively to Plaintiff Coppaken that Keystone had an agreement to employ him after the completion of the asset purchase agreement, and set forth the details of the terms of that employment.  Immediately prior to the signing of the asset purchase agreement, and the filing for bankruptcy, on September 20, 2008, Defendant Keystone reiterated its agreement to employ Mr. Coppaken as a Senior Vice President.  This representation was made, *inter alia*, by Ed Orzetti, President of Defendant Keystone.

**ANSWER:**

**Answering Paragraph 33, Defendant admits only that there were various discussions with Plaintiff, but, except as admitted previously, Defendant is presently without information and knowledge sufficient to form a belief about the remaining allegations in Paragraph 33 of Plaintiff's Petition and, therefore, denies them.**

34.    In the alternative, during the pendency of the bankruptcy filing, Defendant Keystone determined that it would not honor the employment agreement with Mr. Coppaken. Defendant knew that its change of heart regarding its previous statements that the parties had reached an agreement on the employment of Mr. Coppaken rendered those previous affirmative statements on the subject false, yet Defendant was silent as to the falsity of those previous statements, and allowed Mr. Coppaken to continue to rely on the now false statements, without disclosing the falsity of those statements to him.

**ANSWER:**

**Defendant denies the allegations in Paragraph 34 of Plaintiff's Petition.**

35.     The representations of an employment agreement were material, and Mr. Coppaken would not have followed through with the continuance of the bankruptcy proceedings, or the efforts he made on behalf of Defendant to transfer employees and customers to Defendant, had he known the false nature of the misrepresentations.

**ANSWER:**

**Defendant denies the allegations in Paragraph 35 of Plaintiff's Petition.**

36.     Mr. Coppaken relied on the statements of employment by Defendant Keystone, and had the right to rely on those statements.  Defendant Keystone intended that Mr. Coppaken rely on those statements in continuing with the bankruptcy proceedings and in supporting the efforts of Defendant Keystone to purchase the assets through bankruptcy.

**ANSWER:**

**Defendant denies the allegations in Paragraph 36 of Plaintiff's Petition.**

37.     On November 5, 2008, after the completion of the bankruptcy, Ed Orzetti, the President of Keystone, informed Mr. Coppaken that Keystone was offering him a Consulting Agreement, and set forth the terms of such Consulting Agreement in writing.

**ANSWER:**

**Answering Paragraph 37, except as previously admitted, Defendant denies the allegations in Paragraph 37 of Plaintiff's Petition.**

38.     In the alternative, during the pendency of the closing of the asset purchase, Defendant Keystone determined that it would not honor the consulting agreement with Mr. Coppaken.  Defendant knew that its change of heart regarding its previous statements

that the parties had reached an agreement regarding the retention of Mr. Coppaken as a consultant rendered those previous affirmative statements on the subject false, yet Defendant was silent as to the falsity of those previous statements, and allowed Mr. Coppaken to continue to rely on the now false statements, without disclosing the falsity of those statements to him.

**ANSWER:**

**Defendant denies the allegations in Paragraph 38 of Plaintiff's Petition.**

39.     The representations regarding the retention of Mr. Coppaken as a consultant were material to Mr. Coppaken's closing of the asset purchase.

**ANSWER:**

**Defendant denies the allegations in Paragraph 39 of Plaintiff's Petition.**

40.     Mr. Coppaken relied on the statements by Defendant Keystone that it was retaining him as a consultant, and had the right to rely on those statements. Defendant Keystone intended that Mr. Coppaken rely on those statements in closing the asset purchase.

**ANSWER:**

**Defendant denies the allegations in Paragraph 40 of Plaintiff's Petition.**

41.     Defendant acted in wanton, willful and conscious disregard for Plaintiff's rights.

**ANSWER:**

**Defendant denies the allegations in Paragraph 41 of Plaintiff's Petition.**

42.     As a direct result of Defendant's intentional misrepresentations, Plaintiff has suffered damages including but not limited to the value of the Employment

Agreement, including the incentive bonuses pursuant to the Employment Agreement, and the reduced value of the asset purchase price to which he agreed with the understanding that he would be provided additional compensation through the Employment Agreement, and/or the value of the Consulting Agreement.

**ANSWER:**

**Defendant denies the allegations in Paragraph 42 of Plaintiff's Petition.**

WHEREFORE, having fully answered Count II of Plaintiff's Petition, Defendant prays the Court dismiss Count II of Plaintiff's Petition in its entirety, and that Plaintiff take nothing by the Petition or otherwise, and that Defendant be awarded its costs, and for such other relief as the Court deems just and proper.

**ANSWER TO COUNT III**
**BREACH OF EMPLOYMENT AGREEMENT**

43.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**ANSWER:**

**Defendant hereby incorporates its responses to Paragraphs 1 through 42 as if fully set out herein.**

44.     As of September 20, 2008, Defendant had offered and Plaintiff had accepted the terms of the Employment Agreement set forth in Exhibit 1.

**ANSWER:**

**Defendant denies the allegations in Paragraph 44 of Plaintiff's Petition.**

45.     Plaintiff performed all and any conditions precedent to Defendant's performance of the Agreement.

**ANSWER:**

**Defendant denies the allegations in Paragraph 45 of Plaintiff's Petition.**

46.     Plaintiff tendered performance of the Agreement, and stands ready to perform pursuant to the terms of the Agreement.

**ANSWER:**

**Defendant denies the allegations in Paragraph 46 of Plaintiff's Petition.**

47.     Defendant repudiated and breached the Agreement without cause or excuse.

**ANSWER:**

**Defendant denies the allegations in Paragraph 47 of Plaintiff's Petition.**

48.     As a direct result of Defendant's breach of the Employment Agreement, Plaintiff has suffered damages including but not limited to the value of the Employment Agreement, including the incentive bonuses pursuant to the Employment Agreement.

**ANSWER:**

**Defendant denies the allegations in Paragraph 48 of Plaintiff's Petition.**

WHEREFORE, having fully answered Count III of Plaintiff's Petition, Defendant prays the Court dismiss Count III of Plaintiff's Petition in its entirety, and that Plaintiff take nothing by the Petition or otherwise, and that Defendant be awarded its costs, and for such other relief as the Court deems just and proper.

**ANSWER TO COUNT IV**
**BREACH OF CONSULTING AGREEMENT**

49.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**ANSWER:**

**Defendant hereby incorporates its responses to Paragraphs 1 through 48 as if fully set out herein.**

50.     In the alternative, as of November 5, 2008, Defendant had offered and Plaintiff had accepted the terms of the Consulting Agreement set forth in Exhibit 2.

**ANSWER:**

**Defendant denies the allegations in Paragraph 50 of Plaintiff's Petition.**

51.     Plaintiff performed all and any conditions precedent to Defendant's performance of the Agreement.

**ANSWER:**

**Defendant denies the allegations in Paragraph 51 of Plaintiff's Petition.**

52.     Plaintiff tendered performance of the Agreement, and stands ready to perform pursuant to the terms of the Agreement.

**ANSWER:**

**Defendant denies the allegations in Paragraph 52 of Plaintiff's Petition.**

53.     Defendant repudiated and breached the Agreement without cause or excuse.

**ANSWER:**

**Defendant denies the allegations in Paragraph 53 of Plaintiff's Petition.**

54.     As a direct result of Defendant's breach of the Consulting Agreement, Plaintiff has suffered damages including but not limited to the value of the Consulting Agreement, including the incentive bonuses pursuant to the Consulting Agreement.

**ANSWER:**

**Defendant denies the allegations in Paragraph 54 of Plaintiff's Petition.**

WHEREFORE, having fully answered Count IV of Plaintiff's Petition, Defendant prays the Court dismiss Count IV of Plaintiff's Petition in its entirety, and that Plaintiff take nothing by the Petition or otherwise, and that Defendant be awarded its costs, and for such other relief as the Court deems just and proper.

**ANSWER TO COUNT V**
**<u>PROMISSORY ESTOPPEL</u>**

55.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**ANSWER:**

**Defendant hereby incorporates its responses to Paragraphs 1 through 54 as if fully set out herein.**

56.     In the alternative, Defendant Keystone's representations that it would employ Mr. Coppaken or retain him as a consultant constituted promises upon which Mr. Coppaken reasonably relied to his detriment.

**ANSWER:**

**Defendant denies the allegations in Paragraph 56 of Plaintiff's Petition.**

57.     Defendant Keystone intended and expected or should have reasonably expected that Mr. Coppaken would rely on these promises.

**ANSWER:**

**Defendant denies the allegations in Paragraph 57 of Plaintiff's Petition.**

58.     Defendant Keystone's failure to fulfill those promises has resulted in detriment to Mr. Coppaken and an injustice that only the enforcement of the promises can cure.

**ANSWER:**

**Defendant denies the allegations in Paragraph 58 of Plaintiff's Petition.**

59.     Plaintiff has no adequate remedy at law.

**ANSWER:**

**Defendant denies the allegations in Paragraph 59 of Plaintiff's Petition.**

WHEREFORE, having fully answered Count V of Plaintiff's Petition, Defendant prays the Court dismiss Count V of Plaintiff's Petition in its entirety, and that Plaintiff take nothing by the Petition or otherwise, and that Defendant be awarded its costs, and for such other relief as the Court deems just and proper.

**ANSWER TO COUNT VI**
**QUANTUM MERUIT**

60.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**ANSWER:**

**Defendant hereby incorporates its responses to Paragraphs 1 through 59 as if fully set out herein.**

61.     In the alternative, Mr. Coppaken brings this claim for quantum meruit. Upon learning from Defendant Keystone that Keystone was refusing to honor either his Employment Agreement or Consulting Agreement, Mr. Coppaken demanded that Keystone pay him for the value of his services in transferring customer and customer accounts to Keystone, and in transitioning the key personnel from his companies to Keystone.   These services created significant value to Defendant Keystone's new operations. Keystone refused to pay Mr. Coppaken anything at all for his services.

**ANSWER:**

**Defendant denies the allegations in Paragraph 61 of Plaintiff's Petition.**

62.     Mr. Coppaken performed those services at the request and with the knowledge and acquiescence of Defendant Keystone.

**ANSWER:**

**Defendant denies the allegations in Paragraph 62 of Plaintiff's Petition.**

63.     Defendant Keystone enjoyed the benefits of Mr. Coppaken's services, the reasonable value of which can be determined.

**ANSWER:**

**Defendant denies the allegations in Paragraph 63 of Plaintiff's Petition.**

64.     Despite Mr. Coppaken's demand, Defendant Keystone has failed and refused to pay Mr. Coppaken for the reasonable value of his services.

**ANSWER:**

**Defendant denies the allegations in Paragraph 64 of Plaintiff's Petition.**

65.     Plaintiff has no adequate remedy at law.

**ANSWER:**

**Defendant denies the allegations in Paragraph 65 of Plaintiff's Petition.**

WHEREFORE, having fully answered Count VI of Plaintiff's Petition, Defendant prays the Court dismiss Count VI of Plaintiff's Petition in its entirety, and that Plaintiff take nothing by the Petition or otherwise, and that Defendant be awarded its costs, and for such other relief as the Court deems just and proper.

## <u>GENERAL DENIAL TO ALL UNADMITTED ALLEGATIONS</u>

Defendant denies each and every allegation contained in Plaintiff's Petition not specifically admitted in this Answer.

## DEFENSES

1.      Plaintiff's Petition fails in whole or in part to state a claim upon which relief can be granted against Defendant.

2.      Plaintiff's Petition fails in whole or in part to plead Plaintiff's counts with particularity under Federal Rule of Civil Procedure 9.

3.      Plaintiff's claims are barred in whole or in part by the doctrines of laches, estoppel, *res judicata*, waiver, and/or unclean hands, and subject to referral or otherwise governed by the requirements of the Bankruptcy Code, Court, and Rules.

4.      Plaintiff's claims are barred in whole or in part by the Statute of Frauds.

5.      To the extent Plaintiff and Defendant entered an employment or consulting agreement, which Defendant specifically denies, Plaintiff's claims fail for lack of satisfaction of conditions precedent to obligation, lack of consideration, illegality or alternatively, Defendant had a lawful right to terminate, reform, and/or rescind the contract or related contract rights.

6.      Defendant's actions were at all times in good faith and/or justified, permissible, proper, and/or privileged.

7.      Any promises and/or representations made to Plaintiff by Defendant, the existence of which promises and/or representations Defendant specifically denies, were not material in any way to Plaintiff or his relationship with Defendant.  Any reliance on such promises and/or representations by Plaintiff, the existence of which reliance Defendant specifically denies, was not reasonable or was the product of indolence, folly or careless indifference to ordinary and accessible information.

8.      Plaintiff's injuries or damages, the existence of which is specifically denied, were not proximately caused by the acts of Defendant or were not reasonably foreseeable.

9.      Defendant in good faith alleges Plaintiff has failed to mitigate his claimed damages and to the extent Plaintiff recovers any damages based on his claims, the existence of which Defendant specifically denies, Defendant is entitled to a set-off or credit for amounts Plaintiff earned or could have earned if he had mitigated his claimed damages.

10.     Plaintiff is not entitled to recover punitive damages or special damages, the existence of which Defendant specifically denies, because Plaintiff has not set forth and cannot set forth facts sufficient to support a claim for such damages.

11.     Plaintiff's prayer for punitive damages violates the 8th and 14th Amendments to the United States Constitution and violates the Constitution of the State of Missouri.

12.     Defendant reserves the right to assert additional defenses as they become evidenced through discovery or investigation.

WHEREFORE, having fully answered Plaintiff's Petition, Defendant requests this Court dismiss Plaintiff's Petition in its entirety and award Defendant its costs, attorneys' fees, and any further relief this Court deems just and proper.

## COUNTERCLAIMS

### I.      Counterclaim for Fraudulent Misrepresentations

1.      Defendant incorporates its answers to the allegations of jurisdiction, venue, and parties as stated in response above to Plaintiff's Petition Paragraphs 3 to 6 as if fully set forth herein.

2.      In the Spring of 2008, Plaintiff represented to Defendant that Arrow had a signed national account contract with CarQuest and that Arrow wanted to partner with Defendant to help service the account with Defendant's national footprint.

3.      Relying on these material representations, Defendant agreed to meet with Plaintiff, and, in fact, met with Plaintiff in May 2008 in Chicago to discuss Defendant acquiring Arrow.

4.      At that meeting, Plaintiff again represented Arrow had a signed national account contract with CarQuest and Arrow wanted to partner with Defendant to help service the account with Defendant's national footprint.

5.      On June 11, 2008, as part of merger negotiations, Plaintiff sent a letter to Defendant further representing that a national CarQuest account would provide significant value to Defendant and, Plaintiff proposed Defendant pay Plaintiff $3 million in a cash pay out in exchange for what Defendant would receive from the expected sales volume arising from the deal, of which the CarQuest account was a material part.

6.      Although the merger discussion was not successful, Plaintiff and Defendant thereafter began negotiations for Defendant to bid on Arrow's assets through a bankruptcy auction.

7.  During those purchase of asset negotiations, Plaintiff continually represented Arrow's national CarQuest account was based on significant, executed and valid agreements.

8.  On September 19, 2008, Plaintiff signed the Final Asset Purchase Agreement ("APA") a copy of which is attached as Exhibit 1 and incorporated as if fully set forth herein.

9.  Section 2.1(a)(v) of the APA references Schedule 2.1(a)(v), Assumed Executory Contracts of the Disclosure Schedules, which are attached as Exhibit 2 and incorporated as if fully set forth herein.

10.  Further, Schedule 4.20, Contracts, 4.20(a) Number 3 under Agreements With Vendors/Third Party Carriers lists a CarQuest Agreement, effective June 1, 2008, by and between CarQuest and Arrow.

11.  Schedule 2.1(a)(v) lists Disclosure Schedule lists a CarQuest Agreement, effective August 27, 2008, as a valid Assumed Executory Contract.

12.  By listing it on the Disclosure Schedule 2.1(a)(v), Plaintiff further represented and portrayed the alleged national CarQuest account as a legally enforceable contractual relationship having value as an asset to be assumed by Defendant.

13.  At all relevant times herein, Plaintiff knew or should have known that his representations about the alleged national CarQuest contract were false.

14.  At no point did Defendant know Plaintiff's representations regarding the alleged national CarQuest contracts were, in fact, false.

15.  Plaintiff's representations were material to Defendant Keystone's decision to enter into the APA.

16.     Reasonably relying on Plaintiff's representations about the alleged CarQuest contracts, Defendant signed the APA, agreeing to purchase Arrow's assets, including a purported agreement between CarQuest and Arrow.

17.     Defendant was ready, willing, and able to assume the CarQuest business relationship upon Closing and to conduct business with CarQuest immediately thereafter.

18.     However, CarQuest subsequently refused to act in conformance with any assumption of the contracts represented to be in effect by Plaintiff.

19.     To date, no additional incremental CarQuest business has been realized at the CarQuest national account level under the terms of the alleged contracts.

20.     To date, CarQuest has not recognized the alleged agreements as valid, executed or binding.

21.     Neither contract between CarQuest and Arrow existed as Plaintiff represented.

22.     Defendant reasonably relied upon Plaintiff's false or misleading representations to its detriment.

23.     As a direct and proximate result of Plaintiffs' fraudulent misrepresentations, Defendant has been damaged and injured.

WHEREFORE, Defendant prays that the Court enter judgment in its favor and against Plaintiff, for an amount of monetary damages exceeding $1,000,000, plus prejudgment interest at the statutory rate from the date of Plaintiff's fraudulent misrepresentations, plus Defendant's costs incurred herein, and for such other and further relief as the Court deems just and proper.

## II. Counterclaim for Breach of Non-competition Agreement

24. Defendant incorporates its answers to the allegations of jurisdiction, venue, and parties as stated in response above to Plaintiff's Petition Paragraphs 3 to 6 as if fully set forth herein.

25. On or about November 7, 2008, Plaintiff signed a valid and enforceable Non-competition Agreement ("the Non-competition Agreement") with Defendant, a copy of which is attached as Exhibit 3 and incorporated as if fully set forth herein.

26. Section 2(b) of the Non-competition Agreement provides:

"Each Seller agrees that during the period beginning on the date hereof and ending on the fifth anniversary of the date hereof (the "Non-Compete Period"), Sellers shall not, without the prior written consent of the Company, directly or indirectly, anywhere in North America (the "Territory") (i) form, acquire, finance, operate, control or otherwise become associated with an enterprise which is substantially the same as, or competitive with, the business of the Company or any of its Subsidiaries as now conducted (after giving effect to the consummation of transactions contemplated by the Purchase Agreement) or the Business (as defined in the Purchase Agreement) (each a "Competing Business") or (ii) for the purpose of conducting or engaging in a Competing Business, call upon, solicit, advise or otherwise do, or attempt to do, business with any clients, suppliers, customers or accounts of the Company or any of its Subsidiaries."

27. Defendant has fulfilled and remains ready to fulfill all of its obligations under the Non-competition Agreement and Asset Purchase Agreement.

28. All conditions precedent, if any, to the Non-competition Agreement have been satisfied.

29. Subsequent to execution of the APA and Non-compete agreements, Defendant learned that Plaintiff offered to sell certain inventory to Defendant's customers at "close-out" pricing levels.

30. Upon information and belief, Plaintiff sold inventory to Defendant's customers at "close-out" pricing levels.

31.     Plaintiff breached the Non-competition Agreement through his contact, solicitation, dealings, and other business with Defendant's customers.

32.     As a direct and proximate result of Plaintiff's failure to adhere to the terms of the Non-competition Agreement, Defendant has suffered, and continues to suffer, losses, including monetary losses.

WHEREFORE, Defendant prays that the Court enter judgment in its favor and against Plaintiff, for an amount of monetary damages exceeding $60,000.00, plus prejudgment interest at the statutory rate from the date of Plaintiff's breach of said Non-competition Agreement, plus Defendant's costs incurred herein, plus specific performance and/or other injunctive relief in order to enforce or prevent any future violations of the provisions of this Non-competition Agreement, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

HUSCH BLACKWELL SANDERS LLP


By:     */s/ Patrick M. Gavin*
_____
          Robert Tomaso         MO#39870
          Patrick M. Gavin      MO#43696
          Shaun Southworth      MO#62239
          4801 Main Street, Suite 1000
          Kansas City MO 64112
           (816) 983-8000
          (816) 983-8080 (FAX)
          robert.tomaso@huschblackwell.com
          patrick.gavin@huschblackwell.com
          shaun.southworth@huschblackwell.com


ATTORNEYS FOR DEFENDANT
KEYSTONE AUTOMOTIVE OPERATIONS,
INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of April, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Teresa A. Woody
The Woody Law Firm PC
1621 Baltimore Avenue
Kansas City Missouri 64108

and

Eric W. Smith
Siro Smith Dickson PC
1621 Baltimore Avenue
Kansas City Missouri 64108

**ATTORNEYS FOR PLAINTIFF**

_/s/ Patrick M. Gavin_
An attorney for Defendant Keystone