IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RONALD L. COPPAKEN, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No.: 4:10-cv-316 |
| ) | |
| KEYSTONE AUTOMOTIVE ) | |
| OPERATIONS, INC., ) | |
| ) | |
| Defendants. ) | |

**KEYSTONE AUTOMOTIVE OPERATIONS, INC.'S MOTION TO REFER
CAPTIONED CASE TO BANKRUPTCY COURT AND
<u>INTEGRATED BRIEF IN SUPPORT OF SAME</u>**

Defendant Keystone Automotive Operations, Inc. ("Keystone") moves this Court to refer all claims and counterclaims to Case No. 08-50698-jwv7 ("the Bankruptcy Case"), a case pending before Judge Jerry W. Venters ("Judge Venters") of the Western District of Missouri. In support, Keystone states:

**I. <u>INTRODUCTION</u>**

This Court is presented with one straightforward question: In accordance with the En Banc "Order Regarding Referral of Bankruptcy Matters to United States Bankruptcy Judges" dated August 15, 1984 (W.D. Mo. R. Bankr. P. app. 1-1 (2009)) ("the En Banc Referral Order"), should this Court refer this case to the Bankruptcy Court? The answer is yes.

Pursuant to the En Banc Referral Order, Judges of this District automatically refer all bankruptcy-related matters to the Bankruptcy Court. *See id.* The En Banc Referral Order specifically provides that all cases under the Bankruptcy Code and "all proceedings arising under

1

Title 11 or *arising in or related to* cases under Title 11 are referred to the bankruptcy judges of this district." *See id.*

The issues here relate to the Bankruptcy Case and are subject to the automatic En Banc Referral Order. Plaintiff Ronald L. Coppaken ("Plaintiff") was the majority equity holder in Arrow Speed Warehouse, Inc., ("the Debtor") in the Bankruptcy Case. Keystone is related to Arrow Speed Acquisition Corp., the eventual Buyer ("the Buyer") of assets. Over a year after the Debtor filed bankruptcy and the Buyer purchased a substantial amount of Debtor's assets, Plaintiff commenced this case against Keystone alleging that the Asset Purchase Agreement ("the Final APA") covering the sale of assets in bankruptcy ("the Bankruptcy Sale"), was conditioned or dependent upon Plaintiff's employment with Keystone. *See* Doc. No. 1-1 at ¶¶ 8 ("key element"); 11 ("integral part of the entire deal"); 21; 24 (material factor); 28 ("material to . . . closing of the asset purchase"); 31; 32; 35; 39; 42; 43; 49; 55; and 60. Further, even if Plaintiff now attempts to disavow these unmistakable references, the references show all of Plaintiff's claims or Keystone's defenses thereto are related to and intertwined with Judge Venter's approval of the Final APA and/or the Bankruptcy Sale. *See id.* Also, Keystone's counterclaims relate to the bankruptcy and are subject to the En Banc Referral Order. Keystone's first counterclaim arises in part from alleged misrepresentations in the Final APA. *See* Doc. No. 5 at pp. 25-27. The second counterclaim arises from Plaintiff's alleged breach of the Final APA's non-competition agreement. *See id.* at pp. 28-29. These are issues for Judge Venters, who reviewed, approved, and is familiar with the Final APA and the Bankruptcy Sale, and who retained control to interpret the Final APA's terms and all disputes concerning the Bankruptcy Sale. For these reasons, the claims and counterclaims are "related to" the Bankruptcy Case and the Final APA and should be referred to Judge Venters.

Moreover, during his recent deposition, Plaintiff confirmed he seeks damages related to the "reduced value of the asset purchase price" in the Bankruptcy Sale. *See* Plaintiff's Deposition, attached as Exhibit 1, 209:12-210:03. Plaintiff also testified he had been willing to accept a lower price for the assets of his companies because of "opportunities" from an employment agreement. *See id.* at 80:17-81:7. Plaintiff also said he "absolutely" knew he had an obligation to maximize the value of the Debtor's assets ***for the benefit of the creditors***. *See id.* at 91:13-18. Further, Plaintiff acknowledged a higher value for the asset purchase price "would have benefited [the Debtors'] creditors." *See id.* at 210:9-19. Yet, here Plaintiff personally seeks damages for the allegedly reduced purchase price of his companies' assets. *See* Plaintiff's Initial Disclosures, attached as Exhibit 2, at pp. 6-7. Further, Plaintiff waited almost a year after the Bankruptcy Sale before commencing this case, seeking personal damages. Also, Plaintiff admitted he never informed Judge Venters an employment agreement was a condition of the Bankruptcy Sale. *See id*. at 210:20–212:3.

Indeed, the sale of bankruptcy assets is a core proceeding, soundly within the bankruptcy court's jurisdiction. Moreover, Judge Venters expressly retained jurisdiction over interpretation and enforcement of the Final APA and Bankruptcy Sale. *See* Sale Order, Bankr. Doc. No. 144 at p. 21-22.[1] For these reasons, the captioned case should be referred to the Bankruptcy Court, which reserved jurisdiction over these issues.

## II. FACTS

### A. BANKRUPTCY CASE

1. On September 21, 2008, the Debtor filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Bankr. Doc. No. 1.

---

[1] When discussing documents in the instant case, Document Numbers will not be accompanied by a specific Case Number. When discussing the bankruptcy case, Document Numbers will be accompanied by the prefix "Bankr." to refer to Case No. 08-50698-jwv, the Bankruptcy Case.

2. On October 31, 2008, the Bankruptcy Court entered its Order Authorizing The Sale Of Certain Assets Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests ("the Sale Order"). Bankr. Doc. No. 144.

3. In approving the Sale Order, Judge Venters authorized the sale of substantially all of Debtor's assets pursuant to the Final APA. *Id*. at p. 11.

4. In the Sale Order, Judge Venters found all of the Buyer's payments, agreements, and arrangements connected to the asset sale had been disclosed. *Id*. at p. 6.

5. In the Sale Order, Judge Venters found the Buyer's consideration for the assets constituted fair and reasonably equivalent value. *Id*. at p.7.

6. In approving the Sale Order, Judge Venters found the Final APA (as defined in the Sale Order) could only be modified, amended, or supplemented if such modification, amendment, or supplementation would not have a materially adverse effect on the Debtor's estate. *Id.* at p. 21.

7. The Sale Order provided that: "The [Bankruptcy] Court shall ***retain jurisdiction*** to, among other things, interpret, implement, and enforce the terms and provisions of ***this order*** and ***the Final APA***, all amendments thereto and any waivers and consents thereunder and each of the ***agreements executed in connection herewith*** to which the Debtors are a party or which has been assigned by the Debtors to the Prevailing Bidder, and to adjudicate, if necessary, any and ***all disputes concerning or relating in any way to the Sale.*** *Id.* at pp. 21-22 (emphasis added)). Judge Venters reserved jurisdiction as to both interpretation of the Sale Order and the Final APA.

8. The Bankruptcy Case remains open and ongoing. *See* Bankr. Doc.

### B. PLAINTIFF'S LAWSUIT ARISING FROM THE BANKRUPTCY SALE

9. On February 18, 2010, Plaintiff filed a lawsuit against Keystone, Civil Action No. 1016-CV-05575 in the Circuit Court of Jackson County, Missouri, at Kansas City, alleging breach of contract, fraud, and other claims arising from and/or related to the Bankruptcy Sale. *See* Doc. No. 1-1.

10. Therein, Plaintiff essentially alleged all of his claims related to an alleged employment agreement with Keystone that was a "key element" of any deal regarding the Bankruptcy Sale. *See id.* at p. 3.

11. Therein, Plaintiff essentially alleged an employment agreement was "an integral part of the entire deal" and Plaintiff accepted a lower value for his companies in exchange for an allegedly personally-lucrative employment agreement. *See id.* at p. 4.

### C. REMOVAL AND PLAINTIFF'S INITIAL DISCLOSURES

12. On April 2, 2010, Keystone filed a Notice of Removal of Civil Action No. 1016-CV-05575 and removed the case to this Court. Doc. No. 1.

13. That case is now properly pending before this Court. *See* Doc. No. 1.

14. In answering Plaintiff's Petition, Keystone denied that Plaintiff's alleged retention or employment was a part of the above-mentioned purchase of assets. Doc. No. 5 at p. 5.

15. Keystone also filed a counterclaim arising, among other things, from Plaintiff's "disclosures" in the Final APA's Schedules. *See* Doc. No. 5 at p. 26.

16. Keystone also filed a counterclaim seeking enforcement of, among other things, the Final APA's non-competition agreement. *See* Doc. No. 5 at p. 28.

17. Keystone stated this case was subject to referral to the Bankruptcy Court. *See* Doc. No. 5 at p. 23.

18. In Rule 26 Disclosures, Plaintiff noted he sought damages for "the reduced purchase price for Plaintiff's companies in the [Final APA] fraudulently induced by Defendant . . ." *See* Exh. 2 at p. 7.

### D. PLAINTIFF'S DEPOSITION AND RECENT DEADLINES

19. On August 11, 2010, Plaintiff admitted he was seeking damages related to the "reduced value of the asset purchase price." *See* Exh. 1 at 209:12-210:03

20. Plaintiff testified if he had accepted a higher value for the asset purchase price, that price "would have benefited [the Debtors'] creditors." *See id.* at 210:17-19.

21. Plaintiff testified he was willing to accept a lower price for his companies' assets because of "opportunities" from an employment agreement. *See id.* at 80:17-81:7

22. Plaintiff testified he "absolutely" knew his obligation to maximize the value of the Debtor's assets for the benefit of the creditors. *See id.* at 91:13-18.

23. Plaintiff testified he never informed Judge Venters the employment agreement was a condition of the Bankruptcy Sale. *See id*. at 210:20-212:3.

24. The deadline for Plaintiff to amend his Petition has passed. *See* Doc. No. 9 at ¶ 2.

### III. APPLICABLE LAW AND ANALYSIS

The Bankruptcy Court has specialized expertise in bankruptcy matters and functions as a division of this Court. This Court has determined that bankruptcy matters should be referred to the Bankruptcy Court to most efficiently and effectively resolve those matters, as memorialized in the En Banc Referral Order. W.D. Mo. R. Bankr. P. app. 1-1 (2009). That Order provides for automatic referral, ordinarily operating in a virtually invisible manner. But here, referral requires affirmative action by this Court. Keystone asks the Court order referral of this matter to Judge Venters because all of Plaintiff's claims turn on terms and provisions of the Bankruptcy Court's Sale Order, the Final APA, and provisions of the Bankruptcy Code.

### A. THE EN BANC REFERRAL ORDER REQUIRES THIS CASE BE REFERRED TO THE BANKRUPTCY COURT FOR RESOLUTION OF ALL BANKRUPTCY-RELATED ISSUES.

The En Banc Referral Order governs the automatic referral of bankruptcy proceedings from the district court to the bankruptcy court. *Id.* That Order provides "all proceedings arising under Title 11 or ***arising in or related to*** cases under Title 11 are referred to the bankruptcy judges of this district." *Id.* (emphasis added). The Order directs all bankruptcy related cases to the bankruptcy court, and referral is mandatory—cases "are" referred. *See id.*

As noted above, well after the bankruptcy had been filed, Plaintiff filed a lawsuit against Keystone, which Keystone removed to this Court. Here, now that Plaintiff has been deposed, there is no question Plaintiff seeks millions of dollars of damages (for himself) for items he alleged were "key" and "integral" parts of the Bankruptcy Sale and Final APA. Indeed, as pleaded, Plaintiff's claims are related to the Bankruptcy Sale, though Keystone denies any employment agreement was ever a condition of the Final APA. But now that the deadline to amend Plaintiff's Petition has passed, Plaintiff's copious references to the Bankruptcy Sale show Plaintiff's claims or Keystone's defenses thereto relate to the Bankruptcy Sale and Final APA. *See* Doc. No. 1-1 at ¶¶ 8-15. Likewise, Plaintiff seeks damages for a reduced value he alleges the Buyer paid for the Debtor's assets, while admitting any higher value in the Bankruptcy Sale would have otherwise passed to Debtor's estate, and, in turn, Debtor's creditors—instead of passing directly to Plaintiff. *See* Exh. 1, 80:17-81:7, 91:13-18, 209:12-210:3, 210:17-212:3.

Here, the En Banc Referral Order is self-effectuating—cases "are" referred. W.D. Mo. R. Bankr. P. app. 1-1 (2009). The Court determined in advance that cases like Plaintiff's should be, and are, referred to the bankruptcy court without the necessitating any parties' action. Thus, as a matter of law, this case should already be before the Bankruptcy Court without any action by Keystone. Keystone asks this Court to enforce this order and refer this matter to Judge Venters.
7

### B. THE ISSUES HERE ARE CONTROLLED BY THE BANKRUPTCY COURT'S PRIOR SALE ORDER AND SECTION 363 OF THE BANKRUPTCY CODE.

Even if Plaintiff attempts to contend that not all issues should be decided by the Bankruptcy Court, Plaintiff's Petition makes clear all of his claims relate to the Bankruptcy Sale in a "key" and "integral" manner. *See* Doc. No. 1-1 at pp. 3-4. Likewise Keystone's counterclaims arise from representations Plaintiff made as part of the transaction and from actual agreements that are part of the Final APA. *See* Doc. No. 5 at pp. 25-29.

Further, "orders approving the sale of property" in bankruptcy are core proceedings, subject to the Bankruptcy Court's jurisdiction. *See* 28 U.S.C. § 157(b)(2)(N). The Bankruptcy Court should hear and finally decide core proceedings. *See* 28 U.S.C. § 157(b)(1); *see also In re Williams*, 256 B.R. 885, 892 (8th Cir. BAP 2001) (enforcement of orders resulting from core proceedings are themselves considered core proceedings); *In re Duplan Corp.,* 209 B.R. 324, 328 (Bankr. S.D. N.Y. 1997) (it is well settled, under the Bankruptcy Code, that bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders, especially when those orders involve sales of assets under 11 U.S.C. § 363) (numerous citations omitted).

Here, to determine such an agreement was a "key" or "integral" part of the deal, and damages, if any, a court must interpret and enforce the Final APA, the Bankruptcy Sale Order, and the Bankruptcy Code. Therefore, it is appropriate for the Bankruptcy Court to determine these issues, and this Court should refer the matter to Judge Venters.

### C. BECAUSE THESE ISSUES ARE ALREADY PENDING IN THE BANKRUPTCY COURT, POLICY MANDATES REFERRAL OF THIS CASE TO THE BANKRUPTCY COURT.

In making a decision on a Motion to Refer, the district court "should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the

bankruptcy process." *Holland America Ins. Co. v. Succession of Shepherd J. Roy,* 777 F.2d 992, 999 (5th Cir. 1985). The issue of interpreting the Sale Order and the Final APA is already pending before the Bankruptcy Court, which is familiar with the Final APA and Bankruptcy Sale. Also, if this Court were to refuse to refer this issue to the Bankruptcy Court, both the Courts' and the parties' resources could be unnecessarily used by litigating issues twice. The determination of the same issue by two different courts leads to the very real prospect of inconsistent rulings, which would put both Plaintiff and Keystone at a disadvantage. Only referral will best serve the interests of judicial economy and the efficient and uniform delivery of justice.

### D. THE BANKRUPTCY COURT HAS SPECIFICALLY RETAINED JURISDICTION OVER THIS ISSUE.

Judge Venters retained jurisdiction over this matter in the Sale Order: "The Court shall ***retain jurisdiction*** to, among other things, interpret, implement, and enforce the terms and provisions of ***this order*** and ***the Final APA***, all amendments thereto and any waivers and consents thereunder and each of the ***agreements executed in connection herewith*** to which the Debtors are a party or which has been assigned by the Debtors to the Prevailing Bidder, and to adjudicate, if necessary, any and ***all disputes concerning or relating in any way to the Sale."*** *See* Bankr. Doc. No. 144 at pp. 21-22 (emphasis added). In so doing, Judge Venters retained jurisdiction over both the interpretation of his Sale Order and the interpretation of the Final APA. *See id.* Among other things, the Bankruptcy Court also evaluated the consideration proposed to be exchanged in the sale of assets and found the consideration to be fair and a reasonably equivalent value for the assets. *See id.* at p. 21. Additionally, the Bankruptcy Court found the Final APA could only be modified, amended, or supplemented if such modification, amendment, or supplementation did not have a materially adverse effect on the Debtor's estate. *Id.* The

9

Bankruptcy Court should be the Court to determine if any employment agreement, or alleged modification, amendment, or supplementation, was a "key" or "integral" part of that consideration and the Bankruptcy Court has retained jurisdiction to do so. Likewise, the Bankruptcy Court should also assess Keystone's counterclaims.

## IV. CONCLUSION

The En Banc Referral Order automatically refers all core proceedings and bankruptcy-related matters to the Bankruptcy Court for determination. W.D. Mo. R. Bankr. P. app. 1-1 (2009). Plaintiff's claims necessarily invoke the Bankruptcy Code, the enforcement of the Sale Order, and the Final APA, a "core proceeding" subject to the Bankruptcy Court's expressly retained jurisdiction. Consequently, this Court should enforce its own order and refer the case to the Bankruptcy Court. Moreover, the interests of justice and judicial economy mandate referral. The Bankruptcy Court is the appropriate forum for resolution of this issue. For these reasons, Keystone respectfully requests this Court refer the above-captioned case to the Bankruptcy Court, for determination under the Sale Order, the Final APA, and the Bankruptcy Code.

Respectfully submitted,

HUSCH BLACKWELL SANDERS LLP

By: /s/ Shaun C. Southworth
Mark T. Benedict MO#44621
Robert J. Tomaso MO#39870
Patrick M. Gavin MO#43696
Shaun C. Southworth MO#62239
4801 Main Street, Suite 1000
Kansas City MO 64112
(816) 983-8000
(816) 983-8080 (FAX)
robert.tomaso@huschblackwell.com
patrick.gavin@huschblackwell.com
mark.benedict@huschblackwell.com
shaun.southworth@huschblackwell.com

**ATTORNEYS FOR DEFENDANT
KEYSTONE AUTOMOTIVE OPERATIONS, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27th day of August, 2010, a copy of the above and foregoing was served via US. Mail, postage prepaid and electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

    Teresa A. Woody
    The Woody Law Firm PC
    1621 Baltimore Avenue
    Kansas City, MO 64108

    and

    Eric W. Smith
    Siro Smith Dickson PC
    1621 Baltimore Avenue
    Kansas City, MO  64108

    ATTORNEYS FOR PLAINTIFF

        /s/ Shaun C. Southworth
        Attorney for Defendant